UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| EVERETT J. PRESCOTT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV-05-88-B-W |
| | ) | |
| RICHARD D. ROSS, | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED ORDER ON MOTION TO MODIFY ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION[1]

On August 5, 2005, this Court issued an Order Granting Motion for Preliminary Injunction (Order) in favor of Everett J. Prescott, Inc. (EJP) and against Richard D. Ross. The Court enjoined Mr. Ross: (1) from continuing employment with Water Works Supply Corp. or any other business in direct competition with EJP; (2) from contacting, soliciting, or in any way conducting any business with any customers of EJP that were customers of EJP while Mr. Ross was employed by EJP; and, (3) from disclosing any proprietary or confidential information, as those terms are defined by the non-competition and non-disclosure agreement between the parties, at anytime without written authorization from EJP. *Order granting Mot. for Prelim. Inj.* at 22 (Docket # 15). On August 31, 2005, Mr. Ross moved to modify the Order, seeking to eliminate the provision which prevents him from "continuing in employment with Water Works Supply Corp. or any other business in direct competition with EJP," and to clarify the

---

[1] This Amended Order corrects a typographical error contained in the Order on Motion to Modify Order Granting Motion for Preliminary Injunction dated October 4, 2005. The typographical error appears on page 8 of the Order dated October 4, 2005 in the last paragraph. The Order currently reads "Plaintiff Richard D. Ross's Motion" and is amended to read "Defendant Richard D. Ross's Motion".

scope of the prohibition against contacting, soliciting, or conducting business with EJP customers.  *Mot. to Modify Order Granting Prelim. Inj.*  (Docket # 18).

Mr. Ross argues that EJP waived enforcement of certain provisions and that the Order is overbroad.  He urges the Court to modify its Order to restrict Mr. Ross from contacting or soliciting only customers with whom he had a business relationship at EJP, not all EJP customers.  Alternatively, he asks the Court to clarify that he is allowed to be employed by a manufacturer and to contact customers as a manufacturer's representative.  EJP objects to any alteration of the Order.  *Resp. in Opp'n. re Mot. to Modify Order* (Docket # 19).

**I.  Discussion**

**A.  The Non-Competition Agreement, the Geographic Limitation, and Waiver**

The EJP-Ross Non-Competition and Non-Disclosure Agreement (Agreement) contains three relevant covenants:  (1) a covenant not to compete within a covered geographic area; (2) a covenant not to disclose; and, (3) a covenant not to solicit.[2] *Compl.* (Docket # 1, Attach. 2, Ex. A).  It defines "covered geographic area" to include "the marketing and sales areas where Company offers services at the time it seeks to enforce the terms of the Agreement, which includes as of the date of this Agreement the geographical area within a one hundred (100) mile radius of each of the offices, distribution centers, and any other place of business of the Company."  *Id.*  The 100-mile restriction applies only to the covenant not to compete, not the covenants not to disclose or solicit.

The essence of the Agreement is that Mr. Ross is not allowed to use confidential information garnered during his employment with EJP to compete against his former

---

[2]  The Agreement also contains a covenant to surrender business records not implicated here.

employer. This general restriction applies wherever Mr. Ross may be, due to the unrestricted geographic scope of the non-disclosure and non-solicitation clauses.[3] Under these clauses, he could join a direct competitor, but would violate the Agreement if he used EJP confidential information to its disadvantage. An asserted violation would, however, present evidentiary difficulties.[4]

By contrast, the non-competion covenant provides that if Mr. Ross joins a competitor within a 100-mile radius of EJP's business operations, he would thereby violate the Agreement. Proof of a violation would be relatively straightforward. Nevertheless, because they have a more profound impact on the employee and discourage business competition, Maine law treats non-competition agreements more strictly, subjecting them to a reasonableness determination "as to duration, geographic area, and the interests sought to be protected." *Brignull v. Albert,* 666 A.2d 82, 84 (Me. 1995).

Maine law has emphasized that non-competition covenants "are contrary to public policy and will be enforced only to the extent that they are reasonable and sweep no wider than necessary to protect the business interests in issue." *Lord v. Lord,* 454 A.2d 830, 834 (Me. 1983). Maine has held that the court will enforce a non-competition agreement as the employer has "sought to apply it and not as it might have been enforced on its plain terms." *Chapman & Drake v. Harrington,* 545 A.2d 645, 647 (Me. 1988).

---

[3] As this Court noted in its earlier Order, the Maine Supreme Judicial Court has distinguished between non-competition and non-disclosure clauses. *Bernier v. Merrill Air Eng'rs,* 2001 ME 17 ¶ 18, 770 A.2d 97, 103 (holding that "durational limits are not necessary in nondisclosure clauses, as they are in noncompete agreements, because the imposition of geographic or durational limitations would defeat the entire purpose of restricting disclosure, since confidentiality knows no temporal or geographical boundaries").

[4] *Bernier* itself reflects the evidentiary challenges of an action based on breach of a non-disclosure clause. The Superior Court was required to determine whether a former employee used confidential information to develop a dryer design for a new employer. To do so, it had to answer whether "the components of Merrill's original work, including graph oil seals, staggered mirror image nozzles, welded wall panels, and enclosures and burners… were… 'particularized, highly specialized proprietary protected original work.'" *Id.* at ¶ 19, 104.

On the other hand, the party seeking enforcement cannot leave it to the court to enforce only those provisions the court deems reasonable. To do so would require the court to redraft the contract.

During the hearing, this Court, therefore, asked counsel for EJP which provisions it was seeking to enforce. If EJP sought to enforce fewer than all the provisions of the Agreement, this could enhance its claim that the remaining restrictions were reasonable. Mr. Hodgins, EJP's attorney, stated at the outset that EJP's geographic concern was not competition within 100 miles of any EJP distribution center, but only within 100 miles of Middleton, Massachusetts and Concord, New Hampshire.[5] After some dialogue with the Court and consultation with EJP, Mr. Hodgins said his client waived the geographic restriction. On further review of the context of Mr. Hodgins' statements within the transcript, however, this Court is not convinced EJP intended to waive the entire geographical restriction. It is more likely EJP intended to restrict the geographic limitation to within 100 miles of Middleton, Massachusetts and Concord, New Hampshire.

Assuming for a moment, EJP intended to waive the entire geographic restriction, the impact of this waiver would be illusive. As Mr. Ross has pointed out, the geographic limitation actually protects him by limiting the geographic breadth of its restriction. Thus, 101 miles away from an EJP place of business, Mr. Ross could provide services for a competitor, subject to the covenants not to disclose and not to solicit. Eliminating the

---

[5] Mr. Hodgins: "I mean, I would concede, there is no evidence that out in Indiana Mr. Ross is going to have a significant impact. So we believe that there is evidence as to the impact he might have around the Middleton and the Concord areas." *Partial Tr.* at 5 (Docket # 17). *See also Partial Tr.* at 11 (Mr. Hodgins: "His former customers…as we know, they're all in northeast Massachusetts").

4

geographic limitation to the covenant not to compete would have the counterintuitive effect of expanding, not eliminating the geographic reach of the restriction.

Mr. Ross urges the Court to conclude that by eliminating the geographic limitation, EJP waived the covenant not to compete itself. Mr. Ross's argument has the force of logic. The 100-mile limit grants Mr. Ross the right to employment outside its range, so long as he does not violate the other terms of the Agreement; it grants EJP the right to exclude employment within its range, regardless of whether he violates the other terms. Since EJP cannot waive Mr. Ross's rights, when it waived the geographic limitation, it must have been waiving its rights and without any geographic limitation, the non-competition agreement becomes a nullity.

Despite its logic, this Court cannot accept Mr. Ross's argument. The Court had the advantage of being present and participating in the colloquy with EJP counsel and cannot conclude that EJP intended to waive the non-competition clause. To the contrary, EJP filed suit to enforce the non-competition agreement and to prevent Mr. Ross from "[c]ontinuing in employment with Water Works Supply Corp. or any other business in direct competition with [EJP] within a 100-mile radius of Plaintiff's distribution centers…." *Mot. for Temp. Restraining Order* at 1 (Docket # 2). The evidentiary hearing and argument centered on Mr. Ross's employment with Water Works, a direct competitor within the 100-mile restricted area. It is apparent to this Court that in agreeing to waive the geographic limitation, EJP did not intentionally relinquish a known contractual right.[6]

---

[6] The Court's colloquy with counsel for the Plaintiff focused on a discussion of *Chapman & Drake*. In that case, as has been noted earlier, the Maine Supreme Judicial Court concluded that (1) non-competion covenants should be enforced only to the extent that they are reasonable and (2) reasonableness was assessed "only as Chapman & Drake…sought to apply it and not as it might have been enforced on its plain terms". 545 A.2d at 647. Plaintiff's counsel quoted extensively from that portion of the case, and its discussion with the Court centered on whether it could validly circumscribe the geographic limitation and, if so, whether such an application of the agreement would be reasonable. *Partial Tr.* at 6-9 (Mr. Hodgins:

*Johnson v. Zerbst,* 304 U.S. 458, 464 (1938), *overruled in part on other grounds by Edwards v. Arizona*, 451 U.S. 477 (1981)(defining waiver as the "intentional relinquishment or abandonment of a known right."); *United States v. Vazquez-Alomar,* 342 F.3d 1, 4 (1st Cir. 2003); *State v. Walls,* 501 A.2d 803, 805 n.1 (Me. 1985).

This Court agrees with Mr. Ross, however, that the elimination of the restriction works to his detriment and EJP cannot waive his rights. This Court, therefore, amends the Order to impose the 100-mile geographic restriction on the non-competition clause and to restrict its effectiveness, as EJP requested, to within 100 miles of Middleton, Massachusetts and Concord, New Hampshire. Mr. Ross is free to become employed with a direct competitor of EJP outside this 100-mile geographic limit; if he does so, he must continue to abide by the non-disclosure and non-solicitation restrictions in his Agreement.

## B.  The Manufacturing Restriction

The non-competition clause prevents Mr. Ross from providing or offering to provide "services competitive with or similar to those provided by Employer in the Covered Geographic area." In its Motion for Temporary Restraining Order and/or Preliminary Injunction, EJP requested that this Court enjoin Mr. Ross from "continuing in employment with WW or any other business in direct competition with EJP within a 100-mile radius of EJP's distribution centers." *Pl.'s Mot. for TRO and/or Prelim. Inj.* at 1-2. EJP did not expressly request an injunction against employment with a manufacturer and in balancing the equities, this Court concluded:

---

"And that's the part I've asked for which I believe, based on *Chapman & Drake*, we're only seeking to enforce the part"; Mr. Hodgins: "In the alternative, though, again, your Honor, if that is not reasonable…"). At no point did Plaintiff's counsel suggest that the non-competition clause in its entirety would be waived, as is made clear by the contents of his statements and by his reliance on *Chapman & Drake*.

> …the agreement prevents Mr. Ross from working for entities that compete with EJP, but so long as he does not violate the non-disclosure provisions of the contract, he could use his talents and training to work for entities that do not compete with EJP, such as pipe and supply vendors, contractors, or project developers. *Order* at 21.

As EJP concedes, the hearing addressed competition from other pipe and valve distributors, not from manufacturers. *Resp. in Opp'n. re Mot. to Modify Order* at 4. The record does not allow a conclusion about whether a manufacturer is a "direct competitor" or whether if Mr. Ross were to work for a manufacturer, he would be providing services competitive with EJP's within the meaning of the non-competition clause. This Court will not preclude EJP from developing the argument, since it was never waived; however, based on the current record, it cannot conclude manufacturers fit within the non-competition clause. It, therefore, amends its Order to read:

> …the agreement prevents Mr. Ross from working for entities that compete with EJP, but so long as he does not violate the non-disclosure provisions of the contract, he could use his talents and training to work for entities that do not compete directly with EJP, such as pipe and supply manufacturers and vendors, contractors, or project developers.

**C.  The Customer Restriction**

The customer restriction is found in the non-disclosure and non-solicitation clauses.[7] Each clause prohibits Mr. Ross from using EJP customer lists and other customer information, even concerning customers who were not his during his employment. Mr. Ross contends EJP waived the broader restriction by reiterating that it was seeking only to restrict Mr. Ross from soliciting "his" customers; that is: to "keep him out of his former customers." *Mot. to Modify Order Granting Prelim. Inj.* at 1-2*; Partial Tr.* at 8. He argues that in using this language, EJP was not seeking to restrict him from soliciting all EJP customers, just his customers. EJP contends it did not intentionally waive the restriction against all EJP customers, and that Mr. Ross is taking counsel's statements regarding customers out of context. *Resp. in Opp'n. re Mot. to Modify Order* at 2-3. This Court agrees with EJP that the colloquy with counsel taken as a whole is too ambiguous to constitute a waiver.

---

[7] The non-disclosure clause reads:
    Employee understands and agrees that all Proprietary Information and Confidential Information is the property of Company, is valuable to Company, and that Employee has no property interest in it. Employee agrees that both during the term of this Agreement and at all times thereafter, Employee will not, without prior written authorization from Company: (i) disclose, permit access to, publish or otherwise make available any Proprietary Information or Confidential Information to any person or entity; or (ii) use any Proprietary Information or Confidential Information for any purpose other than as required to perform Employee's duties to Company.

The non-solicitation clause reads in pertinent part:
    Employee will not during the term of this Agreement, directly or indirectly, personally or as a principal, agent, stockholder, director, officer, investor, employee, consultant or counselor or in any other capacity in or on behalf of any entity whatsoever, corporate, individual or otherwise: …(c) Solicit or accept business from any referral source that had a business relationship with Company at any time during Employee's employment with Company; or, (d) Solicit or accept business from any person or entity that was a customer or a known prospective customer of Company at any time during Employee's employment with Company, whether or not Employee had a relationship with that customer while employed by Company.

The Agreement defines "Confidential Information" as "…information pertaining to customers, vendors, or other business affiliates of Company." It defines "Proprietary Information" to include "client lists and other confidential and proprietary client information…prospective client information, purchasing information of past and present customers of the Company…."

## II. Conclusion

This Court GRANTS in part Defendant Richard D. Ross's Motion to Modify Order and amends its August 5, 2005 Order as follows:

Richard D. Ross is PRELIMINARILY ENJOINED: 1) from continuing in employment with Water Works Supply Corp. or any other business in direct competition with EJP within 100 miles from Middleton, Massachusetts or Concord, New Hampshire; 2) from contacting, soliciting, or in any way conducting any business with any customers of EJP that were customers of EJP while Ross was employed by EJP; and, 3) from disclosing any proprietary or confidential information, as those terms are defined by the non-competition and non-disclosure Agreement between the parties, at anytime without written authorization from EJP. The non-competition order does not exclude work for a manufacturer of pipe and supply equipment; however, if he accepts such employment, Mr. Ross is still bound by the terms of the non-disclosure and non-solicitation provisions of the Agreement.

Defendant Richard D. Ross's Motion to Modify Order Granting Motion for Preliminary Injunction is otherwise DENIED.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 5th day of October, 2005